**Raymond E. O'BRYANT and Dorothy J. O'Bryant, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. 92–1111.**

United States District Court,
C.D. Illinois,
Peoria Division.

April 13, 1993.

·David L. Higgs, Husch Eppenberger Donohue, Peoria, IL, for plaintiffs.

Gerard A. Brost, Asst. U.S. Atty., Peoria, IL, Leslie M. Singer, Calvin C. Curtis, Tax Div. U.S. Dept. of Justice, Washington, DC, for defendant.

## ORDER

McDADE, District Judge.

Before the Court are Cross Motions for Summary Judgment and Plaintiffs' Motion to Dismiss/Strike Defendant's Counterclaims. For the reasons which follow, Plaintiffs' Motion for Summary Judgment is **GRANTED**. Defendant's Motion for Partial Summary Judgment is **DENIED**. Plaintiffs' Motion to Dismiss Count I of Defendant's Counterclaim is **ALLOWED**. Plaintiffs' Motion to Strike Count II of the Counterclaim is **DENIED**.

## I. BACKGROUND

Plaintiffs' civil suit is an action to quiet title to real estate owned by Plaintiffs in Knox County Illinois. Title is presently clouded by Notices of Federal Tax Lien filed on November 7, 1991 [1] and February 28, 1992, by the Internal Revenue Service (IRS), with the Knox County Recorder for taxable periods ending December 31, 1984, and December 31, 1989. Jurisdiction in this case is conferred by 28 U.S.C. §§ 1340, 1346(b) and (c), and 26 U.S.C. § 7402(a). The United States has waived its immunity to be sued in a quiet title action pursuant to 28 U.S.C. § 2410.

---

1. Count I of Defendant's Counterclaim alleges that Plaintiffs are liable for taxes assessed for 1984. Count II claims liability for taxes assessed for 1989. The tax lien filed on November 7, 1991, was filed to collect for 1989 as well as for 1984. *See* Plaintiffs' Affidavit, Exhibit 6. [Doc. # 12].

## II. FACTS

Although ostensibly before the Court on cross motions for summary judgment, the parties actually seek judgment on the stipulated facts. The facts are as follows. Plaintiffs, Raymond E. O'Bryant and Dorothy J. O'Bryant, are husband and wife and own the real estate in Knox County upon which the IRS has filed Notices of a Federal Tax Lien. The liens at issue concern the taxable period ended December 31, 1984. In 1984, the tax return filed by Plaintiffs apparently did not accurately calculate their tax liability; thus, on November 25, 1985, the IRS made an additional assessment totalling $22,593.20 for 1984. On August 6, 1987, Plaintiffs paid to the IRS the sum of $27,999.93, representing full payment of all tax, interest, and penalties then due, and the IRS released the federal tax lien previously filed against plaintiffs.[2] The United States concedes that the IRS mistakenly credited Plaintiffs' August 6, 1987 payment twice to Plaintiffs' account for 1984, creating what appeared to be an overpayment and generating a refund of $28,925.39 ($27,999.93 plus $925.46 in accrued interest) which was sent to Plaintiffs by check dated January 1, 1988, from the United States Treasury. Sometime later in 1988, the IRS discovered its error and issued a Statement of Adjustment to Account, dated October 24, 1988, requesting payment from Plaintiffs of the refunded amount plus accrued interest ($3,624.96) totalling $31,624.89. On December 9, 1988, the IRS responded by letter to

an inquiry by Plaintiffs, stating that Plaintiffs' current balance was $31,354.84. Although Plaintiffs did not request a refund of any amounts paid for 1984, there is no question that Plaintiffs have refused to remit the amount erroneously refunded by the United States.

The United States did not pursue collection by making a new assessment, admitting that it neither issued a new notice of deficiency for 1984 nor made a new assessment of liability for 1984. The United States also did not pursue an erroneous refund action, pursuant to 26 U.S.C. § 7405(a), which is governed by a two-year statute of limitations under 26 U.S.C. § 6532.[3] The parties agree that the five-year exception is inapplicable because Plaintiffs never requested this refund. Rather, the United States admits that it now seeks to collect the alleged amount of tax due for 1984 and assessed in 1987, pursuant to 26 U.S.C. § 6201(a)(1), through summary collection procedures, pursuant to 26 U.S.C. § 6502(a)(1), because the original assessment is allegedly still valid, due and owing.[4]

## III. DISCUSSION

The parties are now before the Court in an "age-old attempt to ascertain who owes what to whom." Plaintiffs do not challenge the merits or the amount of tax originally assessed against them for 1984. Rather, Plaintiffs challenge the procedural validity of the

---

2. Defendant admits that it released a lien recorded in Sarasota, Florida. *See Answer, para. 10.* [Doc. # 5]; Plaintiffs' Affidavit, Exhibit 2. *See also, infra* note 5.

3. These sections provide:
   *Section 7405. Action for recovery of erroneous refunds.*
   **(a) Refunds after limitation period.** Any portion of a tax imposed by this title, refund of which is erroneously made within the meaning of section 6514, may be recovered by civil action brought in the name of the United States.
   26 U.S.C. § 7405(a)(1992).
   *Section 6532. Periods of limitation on suits.*
   **(a) Suits by taxpayers for refund.—**
   **(b) Suits by United States for recovery of erroneous refund.** Recovery of an erroneous refund by suit under section 7405 shall be allowed only if such suit is begun within 2 years after the making of such refund, except that

such suit may be brought at any time within 5 years from the making of the refund if it appears that any part of the refund was induced by fraud or misrepresentation of a material fact.
26 U.S.C. § 6532(b) (1992).

4. Section 6502 provides:
   *Section 6502. Collection after assessment.*
   **(a) Length of Period.** Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or a proceeding in court, but only if the levy is made or the proceeding begun—(1) within 10 years after the assessment of the tax....
   26 U.S.C. § 6502(a)(1) (1992). Section 6502(a)(1) formerly provided a six year statute of limitations which was amended in 1992 to allow ten years for collection.

tax liens and request judgment invalidating the liens with respect to the 1984 assessment. Plaintiffs argue that the tax liens are invalid because (1) the original assessment for 1984 was "extinguished" by payment on August 6, 1987, and (2) the IRS did not make a new assessment of additional income tax for 1984 upon which to file the liens. Specifically, Plaintiffs contend that they paid the tax assessed for 1984 and "received no notice of deficiency as required by Internal Revenue Code Section 6213 before an [additional] assessment of income tax may be made for the taxable period." *See Complaint, para. 16 and 17.* Plaintiffs also argue that, pursuant to 26 U.S.C. § 6325(a) and (f), the IRS' concomitant release of the original tax lien on August 6, 1987, recorded in Sarasota, Florida, conclusively demonstrates that liability for the original assessment has been satisfied and extinguished.[5]

The Government has counterclaimed to reduce the 1984 assessment to judgment, contending that Plaintiffs have not satisfied their tax liability for 1984, even though they paid the assessed tax, because the IRS mistakenly refunded the amount paid (plus interest) to Plaintiffs on or about January 1, 1988, leaving an unpaid balance in Plaintiffs' account for 1984. The Government contends that an action to collect an erroneous refund (through enforcement of a lien) may be pursued either under Sections 7405 and 6532(b) or through summary collection of the original assessment under Section 6502. The Government also argues that the original "assessment remains unpaid as a result of the erroneous return of the payment," and may be collected without resort to further assessment because the Code sections governing deficiencies do not require the IRS to implement statutory deficiency procedures to collect nonrebate, erroneous refunds. 26 U.S.C. §§ 6211–6215. The Government concludes that it may collect the amount due on the

1984 assessment without resort to further assessment, because this refund does not constitute a rebate.

This case has nothing to do with rebates. The question in this case is whether the IRS may collect an erroneous refund without resort to further assessment, where a taxpayer has once paid and satisfied his assessed tax liability. An understanding of these arguments requires a fairly lengthy discussion of the Code and the case law on this issue.

## A. *The Code*

If a taxpayer's income tax return states an inaccurate amount of tax due, or if the taxpayer fails to file their return on time, the Internal Revenue Code gives the IRS authority to make an "assessment" of liability for the taxable period. However, before an assessment differing from the tax reported in a taxpayer's return is made, the Code requires the IRS to issue a "notice of deficiency," called a 90–day letter. 26 U.S.C. § 6212.

Issuance of the notice of deficiency begins a ninety-day period during which the delinquent taxpayer may file a petition in Tax Court. No assessment of any tax or collection through levy or proceeding in court may begin until after the notice has been mailed and this ninety-day period has expired. When a taxpayer timely files a petition with the Tax Court, no assessment or collection is permitted until the Tax Court renders a final decision. The taxpayer may seek appropriate injunctive relief if the IRS attempts collection or assessment before the expiration of this waiting period. If, however, the IRS finds that collection is not forthcoming, the taxpayer's injunctive relief may be precluded. *See* **Wilkens & Matthews, A Survey of Federal Tax Collection Procedure: Rights and Remedies of Taxpayers and The Internal**

---

**5.** The IRS revoked its release of the lien on February 12, 1992. However, Section 6325(f)(2), which authorizes this corrective action, limits revocations to situations where the release was "erroneously or improvidently" issued. The record is clear and undisputed that the issuance of the Certificate of Release on August 6, 1987, was neither erroneous nor improvidently issued. Plaintiffs paid the full

amount of the assessment and attendant interest and was entitled to a release under Section 6325(a). There are no facts in the record to suggest otherwise. The subsequent erroneous refund by the IRS does not relate back to invalidate this full payment of the original assessment. Therefore, the IRS' effort to rescind the earlier release of lien and Plaintiffs' satisfaction of the original assessment was futile.

Revenue Service 2 (1986) [hereinafter, "*Survey*"] *citing* 26 U.S.C. § 6213(a). After the 90–day period has passed, the IRS may make a Section 6201 assessment and proceed to a Section 6303 notice and demand.[6]

Section 6501 requires the IRS to make an assessment of taxes within three years after the return is filed (except in cases not here relevant). Section 6502(a)(1) provides that the tax, once assessed, may be collected within ten years of the assessment. Once assessed, the IRS may collect the amount due through judicial or administrative methods. The administrative methods include the federal lien, summons, and levy authority. 26 U.S.C. §§ 6321–6326. The IRS also may file an action in a federal district court. 26 U.S.C. § 7403. "Through these proceedings, the IRS seeks to reduce assessments to judgment and foreclose federal tax liens on specific property." *Survey at 2.*

Sections 7405(a) and (b) of the Code provide for the recovery of amounts erroneously refunded through a civil suit. Section 6532(b) provides a two-year statute of limitations for actions brought under Section 7405(a) and (b) of the Code. Section 6514 defines several instances in which a refund is considered erroneous. Erroneous refunds so defined are recoverable under Section 7405(a).

The legislative history behind Section 7405 suggests that the IRS also may collect the refund as it would any other underpayment by issuing a notice of deficiency, making a new assessment of liability and proceeding to a Section 6303 notice and demand. The hearing reports provide:

[A]ny erroneous refund ... may be recovered by suit brought in the name of the United States if such suit is begun within two years after the making of the refund. Obviously, if the limitations period on the making of the assessments has not expired, the erroneous refund may be recov-

ered by assessment in the ordinary manner.

S.Rep. No. 960, 70th Cong., 1st Sess. 42 (1928). *See also Purcella v. United States,* 1992 WL 8723, 22–1 U.S.T.C. (CCH) P 50,083 (D.Colo.1992); *Black Prince Distillery, Inc. v. United States,* 586 F.Supp. 1169, 1173 (D.N.J.1984).

The method of making a new assessment should not be confused with the supplemental assessment procedure in Section 6204(a). Supplementary assessments under Section 6204(a) are designed for situations where the refund constitutes a "rebate," [7] although the Court has found no case that reaches this conclusion. Section 6204(a) provides: The Secretary may, at any time within the period for assessment, make a supplemental assessment whenever it is ascertained that any assessment is imperfect or incomplete in any material respect.[8] Thus, supplementary assessment procedures are used to redetermine liability when the original assessment was inaccurate or incomplete. *Brookhurst v. United States,* 931 F.2d 554, 556 (9th Cir. 1991), *cert. denied,* — U.S. —, 112 S.Ct. 299, 116 L.Ed.2d 242 (1991); *Purcella v. United States,* 1992 WL 8723, 22–1 U.S.T.C. (CCH) P 50,083 (D.Colo.1992).

If redetermination of liability reduces the amount of the original assessment, the refund generated is called a "rebate." 26 U.S.C. 6211(b)(2). A rebate occurs in a situation where "the IRS returns part of an amount assessed and paid because it has redetermined liability, as, for example, when an amended return is filed claiming an additional deduction." *United States v. Wilkes,* 946 F.2d 1143, 1148 (5th Cir.1991). The Code eliminates the amount of the original assessment by the amount of the rebate. Thus, a supplementary assessment must be made before the IRS may collect the remaining balance due on the original assessment.

---

6. Title 26 U.S.C. § 6303 provides:
   § 6303. *Notice and demand for tax.*
   (a) General rule.—* * * the Secretary shall, as soon as practicable, and within 60 days after the making of an assessment of a tax pursuant to section 6203, give notice to each person liable for the unpaid tax, stating the amount and demanding payment thereof....

7. The term "rebate" is defined in 26 U.S.C. § 6211.

8. Collection of supplemental assessments also are governed by the ten-year statute of limitations in Section 6502.

If the IRS later seeks to collect the rebate, it must issue a new notice of deficiency and make a new assessment of liability within the three-year statute of limitations. 26 U.S.C. § 6501(a).

Nonrebate refunds, such as the one in the case at hand, occur in situations where "the IRS returns a portion of an amount assessed and paid for a reason not based on a redetermination of liability, as, for example, when there is an erroneous credit to a taxpayer's account." *United States v. Wilkes*, 946 F.2d 1143, 1148 (5th Cir.1991). Litigation on the issue of how to collect nonrebate, erroneous refunds has produced two lines of cases.

### B. *The Cases*

The first line of cases represents the majority view. In these cases, courts have held that once payment is made on the original assessment, liability is extinguished and cannot be revived by an erroneous refund, because a refund is not a tax.[9] At most, the refund creates an underpayment upon which a new deficiency may be assessed. *United States v. Wilkes*, 946 F.2d 1143 (5th Cir. 1991); *Brookhurst v. United States*, 931 F.2d 554 (9th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 299, 116 L.Ed.2d 242 (1991); *Purcella v. United States*, 1992 WL 8723, 22–1 U.S.T.C. (CCH) P 50,083 (D.Colo.1992); *Rodriguez v. United States*, 629 F.Supp. 333, 344 (N.D.Ill.1986), *citing Marshall v. United States*, 158 F.Supp. 793 (E.D.Tex.1958); *Young v. United States*, 1979 WL 1458, 79–2 U.S.T.C. (CCH) P 9609 (D.Del.1979); *LaFollet v. United States*, 176 F.Supp. 192 (S.D.Cal.1959); *Burns v. United States*, 1990 WL 138240, 90–2 U.S.T.C. (CCH) P 50,479 (S.D.Fla.1990), *Order Amended in Part (not relevant here)*, 1991 WL 115769, 91–1 U.S.T.C. (CCH) P 50,259 (1991). Further, most courts hold that the Government is not limited to a Section 7405 action to recover an erroneous refund, but may collect "by assessment in the ordinary manner," because the refund creates an underpayment. *E.g.*,

*Groetzinger v. Commissioner*, 69 T.C. 309, 1977 WL 3623 (1977). *See also* the cases cited above and *Scholz v. United States*, 773 F.2d 709 (6th Cir.1985); *Beer v. C.I.R.*, 733 F.2d 435 (6th Cir.1984); *Warner v. Commissioner*, 526 F.2d 1 (9th Cir.1975); *United States v. C & R Investments Inc.*, 404 F.2d 314, 315 (10th Cir.1968); *Black Prince Distillery Inc. v. United States*, 586 F.Supp. 1169, 1173 (D.N.J.1984); *Pesch v. Commissioner*, 78 T.C. 100, 1982 WL 11066 (1982); *Krieger v. Commissioner*, 64 T.C. 214, 1975 WL 3080 (1975). One court has held that the Government may collect only under Section 7405, *Akers v. United States*, 541 F.Supp. 65 (M.D.Tenn.1981), and another court has held that the IRS may use statutory deficiency procedures only for interest due on delinquent taxes, while the amount of the refund must be sought under 7405. *Ideal Realty Co. v. United States*, 561 F.2d 1123, 1225 (4th Cir.1977). *See also* 26 U.S.C. § 6601.

The second line of cases adopts the rebate/nonrebate analysis (offered by the Government in this case) which allows summary collection of the original assessment after an erroneous refund. *Davenport v. United States*, 91–2 U.S.T.C. (CCH) P 50,531, 136 B.R. 125 (W.D.Ky.1991); *Sanfellipo v. United States*, 1990 WL 193640, 90–2 U.S.T.C. (CCH) P 50,567 (N.D.Cal.1990). *Cf. Groetzinger v. Commissioner*, 69 T.C. 309, 1977 WL 3623 (1977) (cited by the Government to support this theory, but of dubious authority since the court's actual ruling was limited to a jurisdictional issue under Section 6901 and transferee liability under Section 6324).

As indicated, the IRS' determination of tax liability is represented by an assessment, and it is the assessment which gives the IRS authority to implement collection procedures. Collection procedures are invalid if a valid assessment does not exist. The Government, in this case, admits that the Code requires the IRS to send a new notice of deficiency and make a new assessment before rebates

---

9. A balance due on a nonrebate refund is not the equivalent of the remaining balance due on an original assessment, reduced by the amount of a rebate. The balance due on an original assessment still represents an unpaid legal liability; a balance due to an erroneous refund simply represents an underpayment. The IRS may collect the erroneous refund under Section 7405(a) and (b) or make a new determination of liability by pursuing statutory deficiency procedures and collecting on the new assessment.

may be collected, because "the Code eliminates the assessment [by the amount] of the [rebate]." *See Defendant's Motion for Partial Summary Judgment at 5.*

The Government contends, however, that nonrebate refunds do not eliminate the original assessment, nor do they require the additional deficiency procedures required for rebates before collection begins. Rather, nonrebates allegedly may be collected on the original assessment. Although not discussed in the cases, the basis for this argument appears to be that a "rebate" is issued because the original assessment was inaccurate, i.e., the assessment exceeded the proper amount of liability, and thus the erroneous portion of liability never existed. The rebate is designed to eliminate the inaccurate portion of the assessment and thus the error. Conversely, in a nonrebate case, the refund is the error; the original assessment was accurate, and thus the erroneous refund should not "eliminate" the assessment, because "the assessment remains . . . unpaid as a result of the erroneous return of the payment." *See Defendant's Motion for Partial Summary Judgment at 5.*

### C. Application

■ The Code does not directly answer the question before the Court, namely, whether nonrebate refunds may be collected on the original assessment without resort to further assessment. However, it is obvious that under Section 6325 payment of an assessed tax liability extinguishes all liability for that assessment and can only be revived if there is a proper, subsequent revocation of the release of the lien under Section 6325(f)(2).[10] Further, the legislative history behind Section 7405 indicates that collection of erroneous, nonrebate refunds may not be made without resort to further assessment, where the two-year statute of limitations for Section 7405 has run. Further, although both theories argued in this case have logical appeal, the majority view reflects the policy choices most consistent with the Code provisions.

If an original assessment was never extinguished by payment prior to the erroneous refund, then there would be no point to a two-year statute of limitations since the IRS could always pursue collection on the original assessment under Section 6502. *Purcella v. United States*, 1992 WL 8723, 22–1 U.S.T.C. (CCH) P 50,083 (D.Colo.1992). Further, the initial notice of deficiency would be a mere gesture, rather than a substantive protection for taxpayers, since the taxpayer would not be entitled to new notice of a deficiency once the IRS began collection on the erroneous refund.

The deficiency procedures were designed to give taxpayers notice of their tax liability, as computed by the IRS, and an opportunity to contest that liability in tax court prior to determination of a legal assessment, upon which the IRS may impose tax liens, levies, and summons. Without the doctrine of extinguishment, taxpayers who receive an erroneous refund may have tax liens imposed upon their property, lawsuits filed against them in federal district court to enforce the liens, and interest and penalties charged to them beyond the actual amount of the refund received, all without notice.

■ In the end, the taxpayers in this case obviously seek a "windfall" by holding on to the erroneous refund. *Goldstein, Baron & Lewis, Chartered v. United States*, 1992 WL 237613, 92–2 U.S.T.C. (CCH) P 50,469 (D.Md.1992). However,

> [w]hile this court is aware that the Plaintiffs may receive a windfall, the IRS can only recover the sum pursuant to the powers of Congress. The United States Code allows the IRS to bring a civil action under 26 U.S.C. § 7405 to recover funds mistakenly paid to the wrong taxpayer (within two years) . . . Congress certainly knows that by imposing a strict statute of limitations . . . persons who, for example, received erroneously large refunds could 'keep the money that did not belong to them' . . . [Thus,] [a]ny windfall is a result of congressional action.

*Purcella*, at 3, 1992 WL 8723, at \*4 *citing United States v. Young*, 79–2 U.S.T.C. P 9609, 1979 WL 1458 (D.Del.1979). *Cf. Ra-*

---

10. *See supra* note 5.

dinsky v. United States, 622 F.Supp. 412 (D.Colo.1985). Further, "the entire problem was caused by an IRS error, [and] even without working out who did what to whom in the administrative process, it is readily apparent that the episode was not without cost (in time, effort and anxiety) to the Taxpayer." Goldstein, at 1, 1992 WL 237613 at *1. Granted, the amount of money lost by the IRS' clerical error is also a loss for the Government, however, the Code provides the IRS with means by which to collect erroneous refunds.

The problem for the IRS in this case is that they discovered the erroneous refund too late. The IRS apparently did not discover its mistake until sometime in late 1988, slightly over three years after Plaintiffs' tax return was filed [April 1985]. Thus, the IRS was barred from making a new assessment for 1984 under Section 6501, which requires the IRS to make an assessment of taxes within three years after the return is filed.

Further, Plaintiffs filed this action on March 16, 1992, alleging that the federal liens imposed on their property were invalid because they received neither a new notice of deficiency, nor a new assessment of liability for 1984. By this time, the IRS was barred from pursuing collection of the erroneous refund under Section 7405(a), which requires the IRS to proceed within two years from the date the refund was issued. See United States v. Brown, 782 F.Supp. 321 (N.D.Tex. 1990). Compare Brookhurst v. United States, 931 F.2d 554 (9th Cir.1991). Although the refund was made on or about January 1, 1988, and discovered sometime in late 1988 (well within the two-year statute of limitations under Sections 7405(a) and 6532), the IRS sat on its rights and did not pursue an erroneous refund action, but simply demanded payment on the original assessment, allowing the two-year statute to run.

Thus, the Government is now forced to argue that they may pursue summary collection under Section 6502 on the original assessment made in 1985, even though Plaintiffs satisfied that assessment with payment on August 6, 1987. The Court finds that payment which satisfies an assessment extinguishes liability as to that assessment, and a subsequent erroneous refund which creates an underpayment for the taxable period must be collected pursuant to Sections 7405(a) and 6532(b) or pursued like collection of rebates: the IRS must issue a new notice of deficiency, make a new assessment, and proceed to a Section 6303 notice and demand. Accordingly, the IRS may collect on an original assessment only when that assessment is accurate and has not been satisfied by payment.[11]

This ruling means that the Government may not collect an erroneous refund unless it discovers the mistake within two years of the refund's issuance or within three years from the date a tax return is filed. The Court's refusal to provide an alternative avenue of recovery beyond that provided in Section 7405 and through ordinary assessment procedures, pursuant to Sections 6201, 6303, and 6502(a)(1) may appear harsh, but Congress imposed these limitations for a reason, and the Court may not overlook them. See Brown, 782 F.Supp. at 324. Having decided the applicable law in favor of Plaintiffs' position, it follows that the Government must lose on its cross motion for partial summary judgment.

**D. Motion To Strike/Dismiss Counterclaims**

Plaintiffs' Motion, apparently under Rule 12(b)(6), asserts the defense that neither count of the counterclaim states a claim upon which relief can be granted. In their motion and brief, Plaintiffs view Count I as a claim for recovery of an erroneous refund pursuant to Section 7405 of the Code, which is barred by the two-year statute of limitations.[12] The

---

11. The only cited exception to this rule is Burns v. United States, 1990 WL 138240 (S.D.Fla.1990). In this case, the court found that an affirmative act from the taxpayer could revive a former liability. However, although this court distinguished the facts of its case from the extinguishment cases, it treated their holdings favorably.

12. The running of the statute of limitations, which is an affirmative defense, will be an appropriate ground for dismissal under Rule 12(b)(6) if it "clearly appears on the face of the complaint." See Rylewicz v. Beaton Services, Ltd., 698 F.Supp. 1391, 1398 (N.D.Ill.1988). The Seventh Circuit has held that where a plaintiff by the allegations of his complaint erected the limitations bar, it is

Government views the motion differently, contending that this is an ordinary action to reduce the original 1984 assessment to judgment. Having already decided for Plaintiffs and against the Government on their respective motions for summary judgment, it necessarily follows that the Government must lose on the merits of this claim. Rule 12(b) allows the Court to treat the motion as one for summary judgment and dispose of it accordingly. Since there is no dispute as to the material facts, the only issue is a question of law, no matter how the motion is characterized; and having already decided this issue in Plaintiffs' favor, the Motion to Dismiss Count I is allowed. As an alternative rationale, summary judgment is entered in favor of Plaintiffs and against the Government.

■ The Motion to Dismiss Count II can be disposed of quickly. The essence of Plaintiffs' objection is that this claim for judgment for 1989 taxes is not a compulsory counterclaim and should be stricken. This is undoubtably the case, but there is no proscription against permissive counterclaims which do not arise out of the same transaction or occurrence which forms the basis of Plaintiffs' Complaint. In fact, Rule 13(b) allows the parties to decide whether to interpose noncompulsory counterclaims that otherwise might be the subject matter of independent actions and encourages the filing of these claims as a matter of judicial economy. Wright, Miller and Kane, Federal Practice and Procedure, § 1420 (2nd ed., 1990). Accordingly, the Motion to Strike Count II is denied. Plaintiffs are ordered to serve an answer to this count within twenty (20) days.

## V. CONCLUSION

IT IS THEREFORE ORDERED that Plaintiffs' Motion for Summary Judgment is **GRANTED.** [Doc. # 10–1]. Defendant's Motion for Partial Summary Judgment is **DENIED.** [Doc. # 15–1]. Plaintiffs' Motion to Dismiss [Doc. # 8–1] Count I of Defendant's Counterclaims [Doc. # 7–1] is **ALLOWED.** Plaintiffs' Motion to Strike Count II is **DENIED** [Doc. # 8–1]. Defendant shall serve its answer to Count II within

his duty in order to extricate himself therefrom to plead any exceptions upon which he relied.

twenty (20) days from the date this Order is entered.

*Kincheloe v. Farmer*, 214 F.2d 604, 605 (7th Cir.1954).