**Carroll Eugene SINGLETON and Sheila Singleton, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. 5:95–CV–15–BR2.**

United States District Court,
E.D. North Carolina,
Western Division.

May 8, 1996.

704

Charles Nichols, Manning, Fulton & Skinner, Raleigh, NC, for plaintiffs.

Lawrence P. Blaskopf, U.S. Department of Justice, Trial Attorney, Tax Division, Washington, DC, for defendant.

*ORDER*

BRITT, District Judge.

Before the court are the parties' cross-motions for summary judgment. A hearing was held before the undersigned on 21 March 1996. The issues have been fully briefed and addressed, and this matter is thus ripe for disposition.

## I. *FACTS*

In August 1988, plaintiffs filed their income tax return for the tax year 1987. On such return, plaintiffs claimed the following:

| | |
|---|---|
| Total tax due | $160,370 |
| Total tax payments | $190,661 |
| Refund claimed due | $ 30,291 |

In October 1988, the Internal Revenue Service ("IRS") issued plaintiffs a "Correction Notice–Refund Due Taxpayer," therein notifying plaintiffs that they had made an error in figuring their general business credit. The Notice showed:

| | |
|---|---|
| Corrected tax on return | $ 68,364 |
| Total tax payments | $190,661 |
| Amount of refund | $122,297 |

The refund as calculated by the IRS was $92,006 more than the refund calculated by plaintiffs as due them. Plaintiffs were sent a check for this $122,297 refund.

Thereafter, in January 1991, by letter, the IRS notified plaintiffs that it had adjusted their "alternative minimum tax" based on a retroactive change in the law. The change reflected a corrected alternative minimum tax of $1173. The following month the IRS sent plaintiffs a "Statement of Change to Your Account," stating in part: "As a result of recent changes in the tax laws, rulings, or regulations, we changed your tax return for the above tax year [1987] to correct your minimum tax or alternative minimum tax and other credits." The Statement showed an increase in tax of $93,179 plus interest of $34,012.96, resulting in a total due of $127,-191.96. The increase in tax ($93,179) is the amount "erroneously refunded" in October 1988 ($92,006) plus the amount recalculated as alternative minimum tax due in January 1991 ($1173). The IRS did not issue a notice of deficiency for the total amount due. Rather, the IRS made an assessment for $93,179, sent plaintiffs the Statement, and then demanded payment. The IRS now contends that the amount shown on plaintiffs' 1987 return as the total tax due is in fact correct, and that due to an IRS error, an incorrect amount was allowed as a general business credit, resulting in the erroneous refund.

Subsequent to the receipt of the Statement, plaintiffs, through their attorney, entered into an installment agreement for the tax periods of 1987 and 1990, which provides for monthly payments of $1750 to the IRS. Under this agreement, the IRS collected $93,179 from plaintiffs. Plaintiffs then initiated the instant action, seeking recovery of the amount the IRS has collected from plaintiffs and an order permanently enjoining the collection of any further amounts for their 1987 taxes. In response, the government raised a counterclaim for interest due on the amount erroneously refunded.

## II. *DISCUSSION*

Summary judgment is appropriate if the court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Fourth Circuit has articulated the summary judgment standard as follows:

A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 [106 S.Ct. 2505, 2510, 91 L.Ed.2d 202] (1986). In considering a motion for summary judgment, the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party. *Id.* at 255 [106 S.Ct. at 2513–14]. The plaintiff is entitled to have the credibility of all his evidence presumed. *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir.1990), *cert. denied*, 498 U.S. 1109 [111 S.Ct. 1018, 112 L.Ed.2d 1100] (1991). The party seeking summary judgment has the initial burden to show the absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 [106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265] (1986). The opposing party must demonstrate that a tri-

**706**

able issue of fact exists; he may not rest on mere allegations or denials. *Anderson*, 477 U.S. at 248 [106 S.Ct. at 2510]. A mere scintilla of evidence supporting the case is insufficient. *Id.*

*Patterson v. McLean Credit Union*, 39 F.3d 515, 518 (4th Cir.1994) (quoting *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir.1994)).

### A. Notice of Deficiency

█ The issue here centers on whether the IRS was required to issue a statutory notice of deficiency to plaintiffs prior to assessing the amount due and initiating summary collection procedures. The Seventh Circuit in *O'Bryant v. United States*, 49 F.3d 340, 342 (7th Cir.1995), provides an excellent explanation of the statutory background:

> Typically, when the IRS receives a tax return it evaluates the return for accuracy. If it finds the return satisfactory, it enters an assessment for the amount of the tax the taxpayer has calculated to be owing. If the IRS disagrees with the taxpayers' determination of his tax liability it can enter a different assessment, *but only after* it issues a notice of deficiency to the taxpayer and gives him 90 days to challenge its calculations in the Tax Court. The IRS has three years from the date the refund [return?] is filed to make an assessment of liability.

> Once it makes an assessment the IRS generally has 60 days to issue a notice and demand for payment to the taxpayer, and ten years to collect the assessed amount. Collection may be made through administrative methods (including federal liens, summonses, and levies) or judicial methods (suits to foreclose liens or reduce assessments to judgment). If the IRS discovers that "any assessment is imperfect or incomplete in any material respect," it may correct the problem by making a supple-

mental assessment within three years of the filing of the return.

> Occasionally, the IRS sends the taxpayer a refund check. Since 1944 the Tax Code has recognized two types of refunds: rebate refunds and nonrebate refunds. Rebate refunds are issued on the basis of some substantive recalculation of the tax owed, e.g., if the tax due under the Code was less than the amount shown on the return and previously assessed. Nonrebate refunds are sent not because the IRS determines that the tax paid is not owing but because of mistakes, typically clerical or computer errors.... [R]ebate refunds can be included in deficiency calculations, while nonrebate refunds cannot. Periodically, of course, erroneous refunds (both rebate and nonrebate) are issued. (citations omitted) (emphasis added).

█ When the taxpayer submits payment on a tax assessment, the assessment is extinguished by the amount of the payment. *Clark v. United States*, 63 F.3d 83, 87 (1st Cir.1995); *O'Bryant*, 49 F.3d at 346; *United States v. Wilkes*, 946 F.2d 1143, 1152 (5th Cir.1991); *Bilzerian v. United States*, 887 F.Supp. 1509, 1513 (M.D.Fla.1995); *Rodriguez v. United States*, 629 F.Supp. 333, 344 (N.D.Ill.1986). An erroneous refund of any of this amount does not revive the taxpayer's liability; if anything, it creates an underpayment or a basis for a new liability. *O'Bryant v. U.S.*, 839 F.Supp. 1321, 1326 (C.D.Ill.1993), *aff'd*, 49 F.3d 340 (7th Cir.1995). As such, to recover the erroneous refund, the IRS cannot rely on the original assessment to collect the refund; rather, it can proceed in one of two ways: (1) file an erroneous refund suit under § 7405 or (2) make a new assessment for the amount refunded by following the statutory deficiency procedures.[1] *O'Bryant*, 49 F.3d at 347; *Rodriguez*, 629 F.Supp. at 343; *see also Clark*, 63 F.3d at 88; *Wilkes*, 946 F.2d at 1152. *Contra Davenport v. U.S.*, 136 B.R. 125, 127 (W.D.Ky.1991) (with a non-

---

1. The Fourth Circuit's decision in *Ideal Realty Co. v. United States*, 561 F.2d 1123 (4th Cir.1977) (per curiam), supports the proposition that § 7405 is not the exclusive remedy for the IRS to collect an erroneous refund. There, the court held that interest on a deficiency assessment could be recovered by bringing an erroneous refund suit as well as by using summary proce-

dures. *Id.* at 1125. In support of this holding, the court cited with approval two decisions, each of which held the IRS may recover an erroneous refund by a § 7405 suit or by following the Code's deficiency procedures. *See id.* (citing *Warner v. Commissioner*, 526 F.2d 1 (9th Cir. 1975); *United States v. C & R Invs., Inc.*, 404 F.2d 314 (10th Cir.1968)).

rebate erroneous refund, deficiency procedures not applicable). If the IRS chooses to use summary collection procedures to recover the erroneous refund, it must do so by first issuing a notice of deficiency to the taxpayer. *See* 26 U.S.C. §§ 6212, 6213. Only then may it make an assessment and go forward with collecting the refund. *See id.* § 6213. Although the IRS' failure to abide by this rule may result in a windfall to the taxpayer, the reasoning behind it recognizes the distinction between the amount originally assessed by the IRS (and satisfied by the taxpayer's payment) and the independent liability created by the issuance of an erroneous refund, rebate or nonrebate.

▪ In this case, the government does not deny that it did not follow the Internal Revenue Code's deficiency procedures. While admitting that plaintiffs received an erroneous refund, the government argues, however, that it was not required to follow such procedures as the refund issued constitutes a nonrebate refund, which does not fall within the Code's definition of "deficiency." Yet, as the court reads the cases cited *supra*, the treatment of the recovery of erroneous refunds is the same whether they are rebate or nonrebate refunds. *See O'Bryant*, 839 F.Supp. at 1326 (distinguishing between two lines of cases: one which holds that once a refund is made, "the refund creates an underpayment upon which a new deficiency may be assessed;" and the other which draws a distinction between rebate and nonrebate erroneous refunds).

▪ Additionally, the government contends that the assessment it made for the amount erroneously refunded was authorized as a supplemental assessment. The IRS is entitled to make a supplemental assessment "whenever it is ascertained that any assessment is imperfect or incomplete in any respect." 26 U.S.C. § 6204. Relying on *Brookhurst, Inc. v. United States*, 931 F.2d 554 (9th Cir.), *cert. denied*, 502 U.S. 907, 112 S.Ct. 299, 116 L.Ed.2d 242 (1991), the government argues that once it became aware of its error, it made a supplemental assessment, and therefore, whether or not the original

assessment was extinguished is irrelevant. The court declines to apply this reasoning and questions whether a supplemental assessment would have even been possible here. Supplemental assessments enable the IRS to correct an inaccurate assessment in situations involving rebate refunds. *O'Bryant*, 839 F.Supp. at 1325; *see also O'Bryant*, 49 F.3d at 343 n. 6. A rebate refund reduces the amount of the original assessment, and, in order to collect any remaining balance due on that assessment, the IRS must make a supplemental assessment. *O'Bryant*, 839 F.Supp. at 1325. If the IRS subsequently determines that it generated the rebate refund in error, or in other words erroneously, then it must issue a notice of deficiency and make a new assessment of liability, as it would with a nonrebate erroneous refund. *See id.* at 1326. Finally, if a supplemental assessment were possible under these circumstances, then the option of proceeding with an erroneous refund suit under § 7405 would be a mere superfluity. The IRS could always enter a new, "supplemental" assessment and proceed directly to initiate summary collection procedures, all without giving the taxpayer the opportunity to contest the asserted deficiency in Tax Court.

As the facts are before the court, plaintiffs sent in their return and remitted funds therewith sufficient to cover their tax liability. The IRS, either by clerical error or based on some substantive determination, found plaintiffs' tax liability to be something less than reported on the return. Accordingly, the IRS made an assessment for the amount it thought to be plaintiffs' correct 1987 tax liability. Plaintiffs' payment extinguished this assessment. When the IRS subsequently issued a refund, albeit erroneously, the refund only formed the basis for a potential liability. Upon discovering its error, the IRS should have issued plaintiffs a notice of deficiency prior to making any assessment for the purported liability.[2] Instead, the IRS entered an assessment for the amount without first sending a notice of deficiency. As such, any collection procedures

---

2. It appears the IRS could not have instituted an erroneous refund suit pursuant to § 7405 as the two-year statute of limitations on such actions had run. *See* 26 U.S.C. §§ 6532(b), 7405.

the IRS initiated after such assessment are invalid.

## B. *Waiver*

■ Although the court has found that the IRS should have followed the statutory procedures for issuance of a notice of deficiency, the court's analysis does not end there. The government asserts that plaintiffs have waived any right to contest the collection procedures by acknowledging they owe the taxes at issue.

Initially, in response to this assertion, plaintiffs cite the government's failure to plead waiver as an affirmative defense. The government acknowledges that it did not do so, yet requests that it be allowed, pursuant to Fed.R.Civ.P. 15(b), to so amend its answer in order to conform to the evidence presented in the cross-motions. (*See* Def.'s Resp. Opp'n Pls.' Mot. Partial Summ.J. at 9 n. 2.) Because this request does not fall squarely within Rule 15(b), the court construes it as a motion to amend under Rule 15(a). Amendments under Rule 15(a) should be freely allowed "when justice so requires." As plaintiffs have not pointed to any bad faith on the part of the government or any resulting prejudice, the government's motion to amend its answer to include the affirmative defense of waiver is allowed.

In support of waiver, the government relies on the case of *Goldstein, Baron & Lewis, Chartered v. United States,* 995 F.2d 35 (4th Cir.1993), *cert. denied,* 510 U.S. 1041, 114 S.Ct. 684, 126 L.Ed.2d 652 (1994). In *Goldstein,* the taxpayer correctly reported its withholding tax and paid the sum it thought due. *Id.* at 36. However, the IRS assessed a lesser amount as the tax liability and refunded the difference to taxpayer. *Id.* Upon receipt of the refund, the taxpayer notified the IRS, by letter, that "it did not understand why it was entitled to the refund." *Id.* After recognizing its error, the IRS, without making any assessments, sent notice of the erroneous refund to the taxpayer and demanded payment, prompting the taxpayer to pay the amount in protest. *Id.* The taxpayer then filed suit, arguing that the

IRS had failed to bring an erroneous refund suit to recover the funds. While the parties on appeal argued whether the IRS was required to follow the statutory assessment procedures to recover the refund, the court saw the case as involving a different issue:

> The critical fact that leads us to reverse the district court ... is the fact that the taxpayer acknowledged in writing that it was not entitled to the refund. Indeed, no one contests the fact that the taxpayer owed the money; the taxpayer's sole contention is that the IRS should be required to follow its established procedures for collecting erroneous refunds. Although we agree with that proposition, the taxpayer's acknowledgement of the legitimate tax debt owed to the IRS waived any objection it may have had to collection of the erroneous refund.... In light of the taxpayer's legitimate debt to the IRS and the taxpayer's acknowledgement that it was not entitled to the refund, we conclude that the IRS is entitled to the funds paid under protest in this case.

*Id.* at 37.

Plaintiffs argue that the government's reliance on the waiver theory is misplaced. Plaintiffs contend the installment agreement, discussed *infra,* is not a voluntary relinquishment of a right. Specifically, plaintiffs claim the agreement was signed under threat of levy. If so, such threat does not invalidate the agreement. The funds could have been paid noting that the payment was under protest. Further, the IRS' statement as to what would occur should the parties not reach an agreement does not destroy the voluntariness of the agreement. In addition, plaintiffs submit that the agreement "on its face" is not a waiver because it is not an explicit waiver, such as Form 870 "Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment"; Form 870–AD "Offer to Waive Restrictions on Assessment and Collection of Tax Deficiency and to Accept Overassessment"; and Form 4089 "Notice of Deficiency—Waiver." [3] Plaintiffs have not pointed to

---

**3.** Plaintiffs' counsel submitted copies of these forms to the court at the hearing on the instant motions.

any Code provision which requires the execution of any formal document to effectively waive objection to collection procedures. At the hearing on the instant motions, plaintiffs did cite 26 U.S.C. § 6213(d), which provides in pertinent part that:

> [t]he taxpayer shall at any time (whether or not a notice of deficiency has been issued) have the right, by a signed notice in writing ..., to waive the restrictions provided in subsection (a) on the assessment and collection of the whole or any part of the deficiency.

However, the court does not see this section as limiting the manner in which a taxpayer may waive restrictions on assessment and collection of a deficiency. Rather, the section is for the taxpayer's benefit in situations where the taxpayer does not contest a deficiency and desires to pay off his or her liability without the accrual of interest, which might otherwise occur if the IRS followed the procedures under §§ 6212, 6213 (i.e., issue and send a notice of deficiency, wait 90 days to ensure a petition in the Tax Court has not been filed, and, if not, make an assessment and begin collection procedures). Even assuming § 6213(d) is the only manner by which a taxpayer may waive the statutory assessment and collection restrictions, the agreement entered into between the IRS and plaintiffs constitutes a waiver under this section for the reasons discussed below.

Besides contesting the government's waiver theory, plaintiffs also seek to distinguish *Goldstein* because that case involved employment taxes to which the notice of deficiency procedures, at issue here, are inapplicable. Assuming this contention is true, it does not change the import of *Goldstein.* The court chose to focus exclusively on the taxpayer's acknowledgement of its legitimate tax debt. The court expressed no opinion on what procedures the IRS was required to follow and the effect of its failure to do so. Whether or not the IRS followed the proper statutory assessment procedures was irrelevant to the holding.

Looking to the substance of the installment agreement executed by plaintiffs,[4] the court concludes plaintiffs have waived any objection to the procedures used to collect the refund. The agreement contained on Form 433–D "Installment Agreement" specifically states the tax periods covered and the amount of tax owed. (*See* Def.'s Mem. Supp. Partial Summ.J. Ex. B.) It also provides that the taxpayers agree to make the stated payments "until the liability is paid in full." (*See id.*) Like the taxpayer in *Goldstein,* plaintiffs do not contest that they owe the money for their 1987 taxes; they dispute only the procedures followed by the IRS. Plaintiffs have acknowledged in writing a legitimate debt owed to the IRS. For this reason, plaintiffs cannot now complain about the failure of the IRS to follow the statutory deficiency procedures prior to collecting the amount of $92,006 erroneously refunded.

The government has also moved for summary judgment with respect to its counterclaim for interest due on the amount erroneously refunded. Plaintiffs did not respond to this portion of the government's argument. The government is entitled to recover the interest on the refunded sum based on two provisions of the Code. Interest on a deficiency assessment may be collected pursuant to § 6601(g). *Ideal Realty,* 561 F.2d at 1125. More specifically, when the deficiency is based on an erroneous refund, interest accrues on the refund "from the date of the payment of the refund" pursuant to § 6602. *See United States v. Lasbury,* No. Civ. 82–1212 PHX VAC, 1983 WL 1682 at *2–3 (D.Ariz. Nov. 22, 1983). The government has submitted proof, unopposed by plaintiffs, that as of September 11, 1995 interest has accrued on the refund in the amount $58,965.19. (*See* Def.'s Mem. Supp. Partial Summ.J. Blaskopf Decl. ¶ 7.) Accordingly, the government may recover this amount.

Finally, the court notes that the government's motion did not address the sum of $1173, which represents plaintiffs' revised alternative minimum tax for 1987. The government concedes that plaintiffs are entitled to this amount. (*See* Def.'s Resp. Opp'n Pls.' Mot. Partial Summ.J. at 4.) As such, the

---

4. Plaintiffs' counsel signed the agreement under a power of attorney.

court makes no findings with respect to this amount.

## II. *CONCLUSION*

For the foregoing reasons, plaintiffs' motion is DENIED and the government's motion is ALLOWED. Therefore, it is ORDERED, ADJUDGED, and DECREED that

(1) Plaintiffs have and recover nothing of defendant; and

(2) Defendant have and recover of plaintiffs the sum of $57,792.19, which represents the difference in the interest due ($58,965.19) and the amount to which the government concedes plaintiffs are entitled ($1173).