Eunice R. KARP, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 93 C 2630.

United States District Court,
N.D. Illinois,
Eastern Division.

Nov. 8, 1994.

Michael J. Von Mandel, Mary D. Von Mandel, von Mandel & von Mandel, Chicago, IL, for plaintiff.

James Michael Kuhn, U.S. Attorney's Office, Chicago, IL, Beverly Ortega, Stacy Hallett, U.S. Dept. of Justice, Tax Div., Washington, DC, for defendant.

### MEMORANDUM AND ORDER

MORAN, Chief Judge.

Plaintiff has moved for partial summary judgment and the government has filed a cross motion for summary judgment. The parties do not dispute the basic facts and each has presented everything that party deems relevant to a resolution of the dispute. The dispute relates to the legal implications of those facts. Because we agree with plaintiff's view of those legal implications we grant plaintiff's motion and deny defendant's.

For most of the relevant period the parties agree not only about what happened but also what it all meant. Plaintiff Eunice R. Karp was married to Jerome Karp in 1976, when he was involved in a tax shelter which gave rise to a significant tax liability. Although Eunice and Jerome were in the process of getting a divorce it had not yet gone through and Eunice signed a 1976 joint return with Jerome, at least in part as an accommodation to him, that did not reflect that tax liability. In 1986 the Internal Revenue Service (IRS) issued a statutory notice of deficiency for 1976 and sent it to Eunice. She sent it on to Jerome, presumably because he had agreed in 1977 to indemnify her for any tax liability arising from the 1976 joint return. Jerome filed a Tax Court petition, but in his name alone. On September 24, 1986, Eunice was assessed a deficiency in the amount of $137,-991.88, resulting from a tax deficiency of $55,837 and interest of $82,154.88. Liens were filed against her property in 1987, 1988 and early 1989.

There is no dispute that Eunice, although not involved in the tax shelter that led to the 1976 tax liability, was jointly liable with Jerome for whatever liability there might be. The problem was how to get it paid.

In early 1989 three documents were executed. One related to tax overpayments in 1975, 1977 and 1978. Jerome signed an IRS form on January 18, 1989, accepting the IRS calculation of the amount of the overpayments as correct. That led subsequently to abatement of certain income tax assessments for those years. With a credit being given for a prior payment, the amount of those overpayments, including interest, if applied to the 1976 tax liability, left $53,348 due for 1976. On January 17, 1989, Eunice and Jerome entered into an indemnity agreement, as the involved IRS agents were well aware, in which he agreed to pay the 1976 deficiency and she agreed to enter into an installment payment plan with the IRS, although Jerome would actually make those payments, and she gave up any rights to the overpayments. Finally, on January 18, 1989, Eunice entered into an Installment Agreement with the IRS in which she agreed to pay $9,178.77 a month to pay a tax liability stated to be $53,348 plus interest. All this was pursuant to calculations furnished to the IRS on January 6, 1989, that the previous overpayments plus $53,348, plus $1,724.59 interest arising during the six-month installment payment period equalled the total amount due. In other words, Eunice and the IRS agreed to an installment plan for payment of the net amount due after application of the 1975, 1977 and 1978 overpayments to the 1976 liability.

The stage was set for liquidation of the 1976 liability and, indeed, Jerome did make, in a timely fashion, the payments Eunice was obligated to the IRS to have made pursuant to the Installment Agreement. However, instead of applying the overpayments to the 1976 liability the IRS issued three checks to Jerome and Eunice and mailed them to Jerome. The dates of the checks were July 7, 1989, July 21, 1989, and August 31, 1990. Jerome negotiated all three checks (we are not advised how he could have done so without Eunice's endorsement). The parties agree that Eunice was unaware of the refunds until much later and obtained nothing from them. Eventually the IRS, in July 1993, released the liens on Eunice's property. Then, apparently because it finally realized that the 1976 liability had not been fully liquidated because the overpayments had been refunded to Jerome rather than applied to the 1976 liability, the IRS on August 31, 1993, revoked the release and filed a new lien as well.

Plaintiff insists that the present liens are improper and that she is entitled to damages, not yet established, arising from the IRS failure to release those liens, pursuant to § 7432 of the Internal Revenue Code. The IRS agreed to payment of the 1976 liability, she argues, by application of the overpayments and the installment payments to that liability, and it cannot later revive that liability because of its subsequent erroneous refunds. The IRS contends that it could have applied the overpayments to the 1976 liability but it had no statutory obligation to do so, that the only agreement to so apply them is in the Indemnity Agreement between Eunice and Jerome, to which the IRS was not a party, that the installment agreement required Eunice to pay until the liability was paid in full, and that the refunds were not erroneous because there were in fact overpayments for 1975, 1977 and 1978. It also argues, in its reply memorandum, that plaintiff is in reality seeking to estop the government, a concept of very narrow reach and not applicable here.

Turning to the last point first, plaintiff is not contending that she should be the beneficiary of some governmental error that reduces her tax obligation below that which lawfully should be imposed. She is asking only that full satisfaction of all tax obligations be recognized in the manner she, Jerome and the IRS contemplated. She is right for two reasons. One is that the IRS agreed to that arrangement. The calculation of the amount of the overpayments, the indemnity agreement and the Installment Agreement were all entered into on January 17 or 18, 1989, pursuant to correspondence with the IRS setting forth the arrangement for full satisfaction of the 1976 obligation by application of the overpayments and the periodic payments. The indemnity agreement, of which the IRS was fully aware, permitted the IRS and Jerome to so apply the overpayments without further action by Eunice. The Installment Agreement specifically recited that any refunds otherwise due would be applied to the tax liability, and the installment payments were to be for the amount necessary to make up the difference. The IRS cannot ignore interlocking agreements, by which it would be fully paid, just because it forgot about them when it sent out the refunds. Further, the IRS had in its hands all the funds necessary to extinguish the liability. While the factual circumstances of *United States v. Wilkes,* 946 F.2d 1143 (5th Cir.1991) and *Rodriguez v. United States,* 629 F.Supp. 333 (N.D.Ill.1986) are somewhat different, we think the same principle is applicable: the payment of the entire amount (here by retention of the overpayments and the installment payments) extinguished the obligation, and it could not be revived by subsequent erroneous and unsolicited refunds.

And the refunds were erroneous, not because there were no prior overpayments but because they were not supposed to be refunded. The IRS has statutory discretion to apply or refund, but it cannot exercise that discretion so as to violate the arrangements it had properly and voluntarily accepted. Perhaps the IRS cannot now proceed against Jerome, and, if so, he has had an unwarranted windfall. That is not true of Eunice. She has done all that was expected of her, and the IRS cannot transfer to her the burden of a loss occasioned by its own mistakes. Plaintiff's motion for partial summary judgment is granted, with the IRS directed to release its liens, and the government's motion is denied.