Raymond E. and Dorothy J. O'BRYANT,
Plaintiffs–Appellees,

v.

UNITED STATES of America,
Defendant–Appellant.

No. 94–2230.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 13, 1995.

Decided March 13, 1995.

David L. Higgs, Husch & Eppenberger, Peoria, IL (argued), for Raymond E. and Dorothy J. O'Bryant.

Gary R. Allen, David E. Carmack (argued), Dept. of Justice, Tax Div., Appellate Section, Sally J. Schornstheimer, U.S. Dept. of Justice, Tax Div., Washington, DC, for U.S.

Before COFFEY and KANNE, Circuit Judges, and MORAN, District Judge.[1]

MORAN, District Judge.

The Internal Revenue Service (IRS) appeals the district court's grant of summary judgment in favor of two taxpayers, Raymond and Dorothy O'Bryant. The court held that the IRS impermissibly attempted to collect an erroneous tax refund from the

---

1. The Honorable James B. Moran, Chief Judge of the Northern District of Illinois, is sitting by designation.

O'Bryants by placing liens on their property and levying their assets. We affirm.

## FACTS

The facts relevant to this case are few and are undisputed. In April 1985 the O'Bryants prepared and filed their tax return for the 1984 tax year. The IRS determined that the O'Bryants had not properly figured their tax. After some discussion the parties agreed on the additional amount due, and in November 1985 the IRS made an assessment in that amount. On August 6, 1987, the O'Bryants paid $27,999.93 in full payment of all amounts due for 1984, and as a result the IRS released a tax lien it had placed on the O'Bryants' property.

The O'Bryants did not request a refund of the amount they had paid in taxes for 1984, but they soon received a check dated January 1, 1988, from the United States Treasury in the amount of $28,925.39. Notations on the check indicated that it was a refund of the amount paid on August 6, 1987, plus interest of $925.46.

The O'Bryants heard nothing further from the IRS until the fall of 1988. Then, in a Statement of Adjustment to Account dated October 24, 1988, the IRS requested payment from the O'Bryants for 1984 in the amount of $31,624.89, which represented the original $27,999.93 plus interest. When the O'Bryants inquired about this request the IRS advised them that the August 6, 1987 payment was mistakenly credited to their account twice.

The O'Bryants failed to return the money. The IRS did not attempt to collect it by making a new assessment. It admits that it neither issued a new notice of deficiency for 1984 nor entered a new assessment of liability for that year. Neither did it attempt an erroneous refund action pursuant to 26 U.S.C. § 7405. Rather, it sought to collect the money due for 1984 through the summary collection procedures authorized by 26 U.S.C. § 6502(a)(1)—procedures that are available only if the IRS has made an assess-

ment of liability. The agency used its levy power to collect some $12,807 from the O'Bryants, which it applied to their 1984 liability,[2] and it placed two liens on the O'Bryants' property.

The O'Bryants sued in federal district court to quiet title to their property and to recoup the money the IRS had collected. The government counterclaimed, seeking to reduce to judgment the balance of the erroneous refund for 1984. The O'Bryants moved for summary judgment, arguing that the tax lien and levies were invalid because the original assessment of 1984 tax liability was extinguished by their August 6, 1987 payment and the IRS did not make another assessment of taxes due for 1984 upon which to base its levy action and lien filing. In response, the IRS moved for summary judgment on its counterclaim, contending that despite their August 6, 1987 payment, the O'Bryants had not satisfied their 1984 liability because they retained the refund money.

The district court correctly identified the decisive question as "how to collect nonrebate, erroneous refunds." *O'Bryant v. United States,* 839 F.Supp. 1321, 1326 (C.D.Ill. 1993). The court reviewed the conflicting lines of authority and adopted the majority view, holding that such refunds can be collected only through an erroneous refund suit under § 7405 or by making a new assessment. *Id.* at 1326–28. The IRS subsequently moved the court to amend or alter its judgment, but that motion was denied. *O'Bryant v. United States,* 845 F.Supp. 1270, 1274–75 (C.D.Ill.1994). This appeal ensued.

## DISCUSSION

### I. Standard of Review

We exercise *de novo* review of a district court's decision to grant a motion for summary judgment, reading all the facts in the light most favorable to the nonmoving party. *Sarsha v. Sears, Roebuck & Co.,* 3 F.3d 1035, 1038 (7th Cir.1993). Summary judgment is appropriate only "when the materials before the court demonstrate that there are no gen-

---

**2.** The IRS collected the $12,807 from several sources: income tax overpayments of $840 and $1117, a payment from the O'Bryants of $5000, and a seizure of $5850 in rent owed to the O'Bryants. *O'Bryant v. United States,* 845 F.Supp. 1270, 1272 (C.D.Ill.1994).

uine issues of material fact and [that] the moving party is entitled to judgment as a matter of law." *Id.* No facts are contested here, so the only question is whether the O'Bryants are entitled to judgment as a matter of law.

## II. *Statutory Background*

Because the issue in this case is somewhat complex, we begin with a brief overview of the statutory background. Typically, when the IRS receives a tax return it evaluates the return for accuracy. If it finds the return satisfactory, it enters an assessment for the amount of tax that the taxpayer has calculated to be owing. If the IRS disagrees with the taxpayer's determination of his tax liability it can enter a different assessment, but only after it issues a notice of deficiency to the taxpayer and gives him 90 days to challenge its calculations in the Tax Court. The IRS has three years from the date the refund is filed to make an assessment of liability. 26 U.S.C. §§ 6201, 6212, 6213.

Once it makes an assessment the IRS generally has 60 days to issue a notice and demand for payment to the taxpayer, and ten years to collect the assessed amount. 26 U.S.C. §§ 6303, 6502(a)(1). Collection may be made through administrative methods (including federal liens, summonses, and levies) or judicial methods (suits to foreclose liens or reduce assessments to judgment). 26 U.S.C. §§ 6321–6326, 7403. If the IRS discovers that "any assessment is imperfect or incomplete in any material respect," it may correct the problem by making a supplemental as-

sessment within three years of the filing of the return. 26 U.S.C. § 6204.

■ Occasionally, the IRS sends a taxpayer a refund check. Since 1944 the Tax Code has recognized two types of refunds: rebate refunds and nonrebate refunds. Rebate refunds are issued on the basis of some substantive recalculation of the tax owed, *e.g.*, if the tax due under the Code was less than the amount shown on the return and previously assessed. Nonrebate refunds are sent to the taxpayer not because the IRS determines that the tax paid is not owing but because of mistakes, typically clerical or computer errors. The rebate/nonrebate distinction arises from the definition of "deficiency" contained in 26 U.S.C. § 6211; rebate refunds can be included in deficiency calculations, while nonrebate refunds cannot. Periodically, of course, erroneous refunds (both rebate and nonrebate) are issued. When that happens, the IRS will usually attempt to recover the money. The methods available for doing so depend in part on whether the refund falls into the rebate or nonrebate category.

The problem that faces us in this case is what the IRS can do to recover an erroneous nonrebate refund—the $27,999.93 plus interest it sent the O'Bryants because of an accounting error. We must decide whether that money can be recovered using the remedies typically available after an assessment is made, or whether the original assessment was extinguished when the O'Bryants made their August 6, 1987 payment.

■ There are two ways in which the IRS can recover an erroneous payment to a taxpayer.[3] It can either file suit under § 7405,

3. The IRS argues that it has a third option: initiating a non–§ 7405 suit to recover the erroneous refund. To support this position it points to § 6501(a), which says that "no proceeding in court without assessment for the collection of . . . tax shall be begun after the expiration of [the three-year] period [for making assessments]." The IRS reads § 6501 as authorizing suits "to collect taxes *without* assessment so long as [they are] brought within the period for assessment." Appellant's Brief at 30. Courts have held that the IRS need not make an assessment before suing to collect taxes. *See e.g., In re Davis*, 936 F.2d 771, 774 (4th Cir.1991) ("An assessment of tax is not a prerequisite for the imposition of tax liability."); *Anglemyer v. United States*, 115 B.R. 510, 513–14 (D.Md.1990) ("The Internal Revenue Service is free to sue to obtain a judgment for a

tax liability even without an assessment."). But these courts did not focus on § 6501, nor is their view universally held. *See* Laurence F. Casey, et al., Federal Tax Practice § 2.1 (1992) ("Although courts have stated that assessment is not an indispensable preliminary to suit for collection by the Government, except as provided in Code Sections 6851 and 6861 the statute appears to preclude any collection effort until the deficiency has been assessed following issuance of a statutory notice of deficiency."). Even if we agreed that § 6501 authorizes the IRS to sue to collect taxes without an assessment, we would not logically be required to hold that it authorizes suits to collect erroneous refunds without a reassessment; after all, as explained *infra*, refunds are not the same as taxes. In any event, we need not decide the

the erroneous refund suit provision, or pursue the post-assessment collection procedures outlined above (§ 6303 notice and demand, followed by judicial and/or administrative action).[4] The IRS did not file an erroneous refund action pursuant to § 7405, nor can it do so now as the two-year limitations period imposed by 26 U.S.C. § 6532(b) has expired.[5] Thus the only method open to the agency is the post-assessment route.

As noted above, the IRS has a number of administrative and judicial remedies open to it once it has made an assessment, and it has ten years to exercise them. But those remedies are available only if an assessment has been made. Here the original (1985) assessment is the only one on which the IRS can rely.[6] Its attempts to do so (utilizing the summary procedures, such as liens and levies, that become available to it when an assessment has been made) are the reason this case is before us.

## III. *Opinion Below and Arguments of the Parties*

The district court determined that the O'Bryants' original payment extinguished the 1985 assessment and listed three arguments to support this conclusion. First, it pointed to 26 U.S.C. § 6325, which governs the release of tax liens. Under that section, the court noted, "payment of an assessed tax liability extinguishes all liability for that assessment and can only be revived if there is a proper, subsequent revocation of the release of the lien under Section 6325(f)(2)." *O'Bryant,* 839 F.Supp. at 1327. The court found that § 6325 clearly indicates that an assessment is extinguished when the liability it represents is satisfied.

Second, the court looked to § 7405. The legislative history of that section, it said, indicates that Congress intended to provide only two methods of collecting erroneous refunds: § 7405 suits and "recover[y] by assessment in the ordinary manner." S.Rep. No. 960, 70th Cong., 1st Sess. 42. The court apparently read "recover[y] by assessment" to mean reassessment. Under this reading the IRS does not have the option of pursuing collection based on the *original* assessment; that would defeat congressional intent and render the two-year limitation on § 7405 actions pointless by permitting non-reassessed liability to be pursued any time within ten years of the original assessment. And if the IRS cannot collect on the original assessment, the only sensible conclusion is that that assessment was extinguished.

Third, a rule that payment does not extinguish an assessment would nullify the protections offered by the initial notice of deficiency. A taxpayer like the O'Bryants would not be entitled to a new notice once the IRS sought to collect on the erroneous refund, since no new assessment would be made. Tax liens could be imposed, lawsuits filed, and interest and penalties charged, all without notice. Only if payment extinguishes the assessment can this result be avoided. *Id.*

issue here since the IRS did not file suit within the three-year period for making assessments (which also serves as the limitations period for "proceeding[s] in court without assessment").

4. The parties agree that the IRS is not confined to § 7405 to collect erroneous refunds, but may use any method authorized by the Tax Code. *See Brookhurst, Inc. v. United States,* 931 F.2d 554, 556–57 (9th Cir.) (government may use methods other than specific erroneous refund suit provision (§ 7405) to recover erroneous refunds), *cert. denied,* 502 U.S. 907, 112 S.Ct. 299, 116 L.Ed.2d 242 (1991).

5. Because the O'Bryants did not request the refund they received, the five-year statute of limitations that governs when "it appears that any part of the refund was induced by fraud or misrepresentation of a material fact" does not apply here. 26 U.S.C. § 6532(b).

6. The agency has not made a supplemental assessment under § 6204. This makes sense for several reasons. First, from the government's point of view, there is no problem with the original assessment, which still correctly reflects the taxes the O'Bryants owe(d) for 1984. Second, again from the government's viewpoint, a second assessment is not permitted because the original assessment still exists and "there cannot be two valid assessments for the same tax liability." Appellant's Brief at 10. Third, there was no deficiency within the meaning of § 6211, so a supplemental assessment may not have been permissible. Finally, the limitations period for making supplemental assessments, which is the same as that governing original assessments, had already expired by the time the IRS learned of the erroneous refund.

For these reasons, the court concluded that although its decision handed the O'Bryants a windfall, it made sense in light of the overall scheme of the Tax Code. Certain provisions permit the IRS to recover erroneous refunds, and the court refused to open another avenue that would not sit well with the existing structure. It therefore held that

> payment which satisfies an assessment extinguishes liability as to that assessment, and a subsequent erroneous refund which creates an underpayment for the taxable period must be collected pursuant to [§ 7405] or pursued like collection of rebates: the IRS must issue a new notice of deficiency, make a new assessment, and proceed to a Section 6303 notice and demand.

*Id.* at 1328.

On appeal, the parties essentially repeat the arguments they made before the district court. The IRS' position boils down to this: Because an assessment is merely a bookkeeping device to keep track of the tax a taxpayer owes for a given year (whether that tax has been paid or not), it is distinct from the taxpayer's tax liability and is not automatically extinguished when the taxpayer makes his payment. Rather, the assessment exists in perpetuity, and its existence permits the IRS to use its summary collection procedures to recover any shortfall as long as the ten-year time period set out in § 6502 has not expired.

The IRS makes several points in support of its characterization of assessments as distinct from tax liabilities. First, it notes that a taxpayer can owe taxes even when there has been no assessment. Section 6151 of the Tax Code provides that "when a return of tax is required under [the Code], the person required to make such return shall, *without assessment or notice and demand from the Secretary* [of the Treasury], pay such tax." 26 U.S.C. § 6151 (emphasis added). Second, the government can bring suit to collect unpaid taxes even when there has been no assessment, as long as the suit is brought within the period allowed for assessments. 26 U.S.C. § 6501(a).[7] Third, assessments

are made even when the amount due has been correctly figured on the taxpayer's return and paid in full. 26 U.S.C. § 6201(a) (requiring assessment of all taxes imposed by Title 26). Fourth, the Code seems to differentiate between the assessment and the taxpayer's liability; it does not ascribe the same meaning to both. *See e.g.*, 26 U.S.C. § 6322 (liens "shall continue until the liability for the amount so assessed ... is satisfied").

On these bases, the IRS argues that the assessment is not the same as the taxpayer's liability, it is merely an administrative record of the taxpayer's total liability for the year and therefore is not something that can be "satisfied" and "extinguished" by payment in full (like a promissory note or mortgage, for example). Rather, it still exists and may be sued upon as long as the taxpayer still owes money to the IRS and the ten-year limitations period of § 6502(a)(1) has not yet expired. Thus the district court's decision, which treated the assessment as extinguished by the O'Bryants' August 6, 1987 payment, is incorrect.

The O'Bryants' argument is equally straightforward. When they paid their 1984 taxes in full, they say, their liability was satisfied and the lien on their property was released. After the IRS sent them an erroneous (and unsolicited) refund in 1988, the agency did not institute a suit under § 7405, nor did it follow the usual deficiency procedures (notice of deficiency, etc.) under § 6212 to reassess the O'Bryants' liability. Instead, the government attempted to rely on the original assessment, seeking to recover on it a second time. While § 6502 authorizes the collection of the assessed amount, the O'Bryants say, it does not authorize two collections of the same assessment, nor does it authorize the collection of an erroneous refund. The IRS had to rely on § 7405 or make a new assessment, and it failed to do so. Therefore, the O'Bryants argue that the district court correctly found in their favor.

## IV. *Analysis*

This case closely resembles two district court decisions from this circuit: *Rodriguez*

---

7. As explained *supra* at note 3, there is some dispute on this point.

*v. United States,* 629 F.Supp. 333 (N.D.Ill. 1986), and *Karp v. United States,* 868 F.Supp. 235 (N.D.Ill.1994). In both of those cases the IRS sent taxpayers unsolicited refunds that were unrelated to a recalculation of tax liability (*i.e.,* nonrebate refunds) after the taxpayers had already paid the amount the IRS' assessment said they owed. The courts in both cases held that because "a refund is not, properly speaking, a tax amount," "the act of sending a refund cannot of itself revive or continue a pre-existing tax liability." *Rodriguez,* 629 F.Supp. at 344; *see also Karp,* 868 F.Supp. at 237. At most, an erroneous refund results in an underpayment that the IRS can seek to recover through deficiency procedures. *Rodriguez,* 629 F.Supp. at 344; *see also Karp,* 868 F.Supp. at 237 ("the payment of the entire [assessed] amount ... extinguished the obligation, and it could not be revived by subsequent erroneous and unsolicited refunds").

The Fifth Circuit, the only other federal appellate court to confront this issue directly,[8] agreed with the reasoning of *Rodriguez* and *Karp,* holding that "as a taxpayer makes payment against a tax assessment, the assessment is extinguished in the amount paid and cannot be revived by the IRS's giving the taxpayer an unsolicited, erroneous refund." *United States v. Wilkes,* 946 F.2d 1143, 1152 (5th Cir.1991).

As the district court pointed out, most of the cases in this area are in accord with *Rodriguez* and *Wilkes*—only a few support the IRS' position. In fact, the government cites only three: *Davenport v. United States,* 136 B.R. 125 (W.D.Ky.1991); *Sanfellipo v. United States,* No. C–89–3988–CAL, 1990 WL 193640 (N.D.Cal. Oct. 29, 1990); and *Groetzinger v. Commissioner,* 69 T.C. 309, 1977 WL 3623 (1977). *Davenport* held that "[a] non-rebate erroneous refund simply gives back to the taxpayer a part of the taxpayer's assessed tax and the assessed balance due may be collected by ordinary collection procedures [under § 6502]." 136 B.R. at 127. Similarly, *Sanfellipo* held that the taxpayer's payment of his liability on three tax accounts—which the IRS mistakenly credited to one of his other tax accounts, resulting in refunds from that account—"did not extinguish the liabilities [on the first three accounts] or otherwise foreclose the IRS from attempting to collect the erroneous refunds." 1990 WL 193640 at *2.

*Groetzinger* is somewhat different. In that case an estate filed an inaccurate tax return. The IRS made two deficiency assessments, and the estate paid the entire amount of tax due—nearly $24,000. After a few months had passed the IRS erroneously sent the estate a refund of more than $19,000, which was distributed to the estate's beneficiaries. A few years later, the IRS sent the beneficiaries notices of liability under the transferee liability provisions of the Code. The beneficiaries sued. In the Tax Court the issues were whether the court had jurisdiction (which depended on whether there had been an underpayment of tax, *see* 26 U.S.C. § 6901) and, if so, whether the beneficiaries were liable for their portions of the erroneous refund. 69 T.C. at 310–11. In concluding that it had jurisdiction, the court said: "[T]here is an underpayment of tax within the meaning of section 6901(b).... Arguably, the estate taxes were fully paid after [the IRS] negotiated the [estate's checks]. But when all of the financial transactions are viewed together, there is clearly an underpayment of tax." *Id.* at 315. The IRS argues that "[a]lthough *Groetzinger* dealt with the meaning of the word 'underpayment' for purposes of Section 6901, the court's determination is ultimately based upon the same broad principle that governs this case ... that an assessment is not eradicated or somehow legally nullified by a pay-

---

**8.** The Ninth Circuit considered a related issue in *Brookhurst v. Commissioner,* 931 F.2d 554 (9th Cir.), *cert. denied,* 502 U.S. 907, 112 S.Ct. 299, 116 L.Ed.2d 242 (1991). Both parties try to find support in that case, but it is largely inapplicable here. *Brookhurst* held that although the taxpayer had previously paid his assessed liability in its entirety, the IRS had properly made a supplemental assessment of his liability and could recover from him on that basis. *Id.* at 556–57. Our case involves a nonrebate refund, not a rebate refund as in *Brookhurst,* so a supplemental assessment probably would not have been possible. *See supra* note 6. In any event, the IRS made no attempt to make a second assessment of the O'Bryants' liability. Thus, *Brookhurst* is of little use to us.

ment that is subsequently returned by mistake unrelated to a determination of the underlying liability." Appellant's Brief at 25.

■ We disagree with *Davenport, Sanfellipo,* and (to the extent its reasoning applies here) *Groetzinger.* There is some appeal to the IRS' argument that because it properly assessed the O'Bryants' tax liability and is still missing that amount, it should be able to attempt to collect the money in any way it normally could—that all the transactions related to the O'Bryants' 1984 tax liability should be taken together. But that approach would overlook the fundamental difference in character between the money that the O'Bryants now possess (a refund caused by the IRS' error) and the money they originally owed the IRS (their tax liability). The money the O'Bryants have now is not the money that the IRS' original assessment contemplated, since that amount was already paid. Rather, it is a payment the IRS accidentally sent them. They owe it to the government because they have been unjustly enriched by it, not because they have not paid their taxes. *See United States v. Bell,* 818 F.Supp. 444, 448 (D.Mass.1993) ("a suit to recover an erroneous refund is essentially an action for restitution"). Because it is a refund, the money the O'Bryants received is not part of the taxpaying transaction as the IRS asserts and therefore cannot be recovered through the § 6502 post-assessment collection procedures. It would not make sense to allow the IRS to use those procedures (which are premised on the taxpayer's not having paid his tax debt) to recover money it accidentally sent to the taxpayer. Rather, the agency is confined to the erroneous refund collection procedures available to it under the Tax Code—§ 7405 and the deficiency/assessment procedures.[9] Because the agency did not (and now cannot) use those procedures, we must hold in the O'Bryants' favor.

As our discussion indicates, we are unpersuaded by the IRS' assertion that assessments are merely bookkeeping devices that cannot be extinguished by payment. We think this argument misses the point. Regardless of whether the assessment is a record of the taxpayer's tax liability or is the liability itself, the liability has already been satisfied and cannot be sued on to collect a refund that results not from that liability or any reevaluation thereof but from a simple mistake. In any event, the IRS' argument on this point is undercut by its assertion elsewhere that assessments are abated automatically when a *rebate* refund is issued.[10] If the assessment is abated by a rebate refund, then clearly it is not always the unchanging record of tax liability that the IRS claims, and we fail to see why an assessment should be constant in the nonrebate refund context when it is variable in the rebate refund context.

Moreover, although it may seem unjust that the IRS cannot recover its erroneous refund in this case (after all, our holding does give the O'Bryants a windfall), we cannot base our resolution of the issue before us on the equities of a particular factual situation. Congress gave the IRS specifically delineated collection authority, and the IRS must act within that authority. In any event, there are many situations in which permitting the

---

9. As stated *supra* at note 3, we do not decide whether the IRS has a third option; a suit in federal court within the limitations period of § 6501.

10. The following colloquy took place at oral argument:

   IRS ATTORNEY: If there is ... what we call a rebate refund, that reduces the assessment. Now, if [the IRS] wants to increase the assessment, it must go through the deficiency procedures.

   \*    \*    \*    \*    \*    \*

   JUDGE MORAN: [Y]ou say that if there is a rebate refund, that that bookkeeping entry is abated.

   IRS ATTORNEY: That's correct.

   JUDGE MORAN: But if there is a nonrebate refund, that bookkeeping error is not abated, so that it does have legal consequences—namely, for ten years [the IRS] can go back and rely on it to collect.

   IRS ATTORNEY: Right. That's correct.

   The IRS adopted a similar view in its brief. Appellant's Brief at 9–10, 21–22.

IRS to recover would be just as unfair as barring recovery here. In *Karp*, for example, the IRS issued an erroneous tax refund after a woman and her husband filed a joint tax return. It later tried to recover the refund amount from the woman on the continuing assessment concept, even though the refund had been sent to the husband—the woman had long been divorced from the husband and she had never seen the refund. 868 F.Supp. at 236–37. Under the Code, the IRS is no more entitled to recover here than it was in *Karp*.

The IRS objects that our holding leaves it with fewer collection options for erroneous nonrebate refunds. It contends that the legislative history of § 7405 shows that that section was not intended to be the agency's exclusive method for collecting erroneous refunds. Rather, "the erroneous refund may [also] be recovered by assessment in the ordinary manner." S.Rep. No. 960, 70th Cong., 1st Sess. 42. The IRS argues that the ordinary manner of collecting a nonrebate refund is "to collect on the original, unabated assessment," since nonrebate refunds cannot be the basis for reassessment. Appellant's Reply Brief at 3 n. 1.

While we agree with the general proposition that § 7405 preserved the other methods of collecting erroneous refunds that were available to the IRS at the time, *see Brookhurst*, 931 F.2d at 556–57, we do not find it controlling here. First, nonrebate refunds are not necessarily governed by the intentions Congress had in 1928, some sixteen years before the concept of a nonrebate refund was incorporated into the Code. Second, it is an unjustified leap of logic to say that because nonrebate refunds cannot be recovered by reassessment, they must be collectible by resort to the original assessment. There is no indication in the Code that Congress intended such a result and we refuse to reach it, especially when doing so would require us to mischaracterize an erroneous refund as a tax liability.

Finally, we should add that although we agree with the district court's holding that the collection methods the IRS used here were unauthorized, we go beyond that court's reliance on three Tax Code provisions whose purposes would be frustrated (or at least undermined) if an assessment were not extinguished by payment of the taxpayer's liability. The fundamental reason for requiring the IRS to pursue erroneous nonrebate refunds through means other than the post-assessment procedures is that erroneous refunds and tax liabilities are simply not of the same ilk. When a taxpayer mails the IRS a check in the full amount of his assessed tax liability, and the IRS cashes it, the taxpayer's liability is satisfied, and unless a new assessment is made later on, any erroneous, unsolicited refund that the IRS happens to send the taxpayer must be handled on its own terms, not under the rubric of the assessed liability. That is, the IRS must use the statutory procedures Congress has provided for it to collect erroneous refunds: § 7405 suits and deficiency proceedings. The IRS did not do so in this case, so its lien and levies are invalid.[11] The judgment is affirmed.

---

11. We do not mean to say that the O'Bryants are entitled to recover all the money the IRS collected from them. The district court held that the statute of limitations barred the O'Bryants' claim to all but $5850 of the $12,807 levied by the IRS. *O'Bryant v. United States*, 845 F.Supp. 1270, 1273 (C.D.Ill.1994). Because that aspect of the decision was not appealed, we will not disturb it. *See Luddington v. Indiana Bell Telephone Co.*, 966 F.2d 225, 230 (7th Cir.1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 1641, 128 L.Ed.2d 362 (1994).