T.C. Memo. 2014-112

UNITED STATES TAX COURT

YRC REGIONAL TRANSPORT, INC. AND SUBSIDIARIES, f.k.a. USF
CORPORATION AND SUBSIDIARIES, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 27612-11.                      Filed June 10, 2014.

<u>Howard J. Levine</u>, <u>Richard Alan Levine</u>, and <u>Libin Zhang</u>, for petitioner.

<u>Deborah H. Delgado</u> and <u>R. Scott Shieldes</u>, for respondent.

MEMORANDUM OPINION

KERRIGAN, <u>Judge</u>:  This case is before the Court on petitioner's motion
for summary judgment filed under Rule 121 upon the question of whether the Tax
Court has jurisdiction over a duplicate refund made to petitioner.  Respondent
objects to the motion.

**[\*2]** On September 29, 2011, respondent issued petitioner a notice of deficiency, increasing petitioner's tax liability by $63,854 for tax year 1999. In respondent's amended answer respondent asserts that petitioner's deficiency should be increased to $327,163, disallowing fully a $351,487 refund issued to petitioner on April 2, 2010.[1] Regarding the motion for summary judgment, petitioner disputes only respondent's characterization of the April 2, 2010, refund as a rebate refund.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

<u>Background</u>

The following facts are not in dispute. Petitioner's principal place of business was in Kansas when it filed the petition.

In May 2005 petitioner was acquired by YRC Worldwide Inc. & Subsidiaries (YRC Worldwide).

YRC Worldwide reported a net operating loss on its Form 1120, U.S. Corporation Income Tax Return, its consolidated return for tax year 2008. YRC

---

[1]The new deficiency represents an increase of $263,138 from the $63,584 deficiency determined in the notice of deficiency.

[*3] Worldwide carried back a portion of that net operating loss to tax year 1999 for petitioner. In 1999 petitioner was known as USFreightways Corp. & Subsidiaries.[2] On June 25, 2009, YRC Worldwide filed a Form 1139, Corporation Application for Tentative Refund, requesting a $351,487 tentative refund for petitioner's 1999 tax year attributable to YRC Worldwide's 2008 net operating loss carryback.[3]

On September 30, 2009, respondent issued to petitioner a $351,966 refund check, of which $351,487 was a tentative refund of corporate income tax for petitioner's 1999 tax year and $479 was net overpayment interest. Petitioner received and deposited this refund check. The parties agree that the September 30, 2009, refund was a rebate refund within the definition of section 6211(b)(2).

At a time not apparent from the record respondent "processed" the Form 1139 a second time. On April 2, 2010, respondent issued to petitioner a $357,205 refund check, of which $351,487 was a tentative refund of corporate income tax for petitioner's 1999 tax year and $5,718 was net overpayment interest. Petitioner received and deposited this refund check.

---

[2]Since 1999 petitioner has also been known as USF Corp. & Subsidiaries.

[3]YRC Worldwide also filed two Forms 1139 requesting tentative refunds of $269,383 and $423,553 for subsidiaries Yellow Corp. & Subsidiaries and Roadway Express, respectively.

**[*4]**   Neither petitioner nor YRC Worldwide filed an independent claim for petitioner's 1999 tax year that would have resulted in the two tax refund payments of $351,487, plus interest, issued to petitioner on September 30, 2009, and April 2, 2010.

At a time not apparent from the record respondent decreased YRC Worldwide's net operating loss for tax year 2008.  Because of this decrease, respondent determined that $182,441 of YRC Worldwide's net operating loss carryback as attributed to petitioner's 1999 tax year should be disallowed.  In the notice of deficiency, respondent determined that this disallowance resulted in a deficiency of $63,854 for petitioner's 1999 tax year.

In the amended answer, however, respondent requests that petitioner's deficiency for tax year 1999 be increased from $63,854 to $327,163 so as to disallow "the double NOL deduction that arises from a duplicate processing of a tentative refund".

Discussion

I.    Summary Judgment

Summary judgment may be granted where the pleadings and other materials show that there is no genuine dispute as to any material fact and that a decision may be rendered as a matter of law.  Rule 121(b); Sundstrand Corp. v.

**[*5]** <u>Commissioner</u>, 98 T.C. 518, 520 (1992), <u>aff'd</u>, 17 F.3d 965 (7th Cir. 1994).

The burden is on the moving party (in this case, petitioner) to demonstrate that

there is no genuine dispute as to any material fact and that he or she is entitled to

judgment as a matter of law. <u>FPL Grp., Inc. & Subs. v. Commissioner</u>, 116 T.C.

73, 74-75 (2001). In considering a motion for summary judgment, we view

evidence in the light most favorable to the nonmoving party. <u>Bond v.</u>

<u>Commissioner</u>, 100 T.C. 32, 36 (1993). The nonmoving party may not rest upon

the mere allegations or denials of his or her pleading but must set forth specific

facts showing there is a genuine dispute for trial. <u>Sundstrand Corp. v.</u>

<u>Commissioner</u>, 98 T.C. at 520.

Respondent has failed to show that there is a genuine dispute for trial. As

discussed below, respondent contends merely that the second "processing" was

sufficient to render the April 2, 2010, refund a rebate refund. Consequently, we

conclude there is no dispute as to any material fact and that a decision may be

rendered as a matter of law.

II.     <u>Rebate Refunds and Nonrebate Refunds</u>

The Internal Revenue Code recognizes two types of refunds: rebate and

nonrebate. <u>O'Bryant v. United States</u>, 49 F.3d 340, 342 (7th Cir. 1995), <u>aff'g</u> 839

F. Supp. 1321 (C.D. Ill. 1993); <u>Acme Steel Co. v. Commissioner</u>, T.C. Memo.

**[*6]** 2003-118, slip op. at 27. Rebate refunds are issued on the basis of a substantive recalculation of a taxpayer's tax liability, e.g., the amount of tax due is less than the tax shown on the return. Acme Steel Co. v. Commissioner, slip op. at 27; see sec. 6211(b)(2). If the recalculation of tax liability is correct, the taxpayer may retain the refund; however, if the recalculation of tax liability is incorrect, the Commissioner must recover the erroneous refund. Acme Steel Co. v. Commissioner, slip op. at 27. Rebate refunds issued in error may be recovered through the deficiency procedures of sections 6211-6215 or an action for recovery of an erroneous refund under section 7405. Id.

Nonrebate refunds, on the other hand, bear no relation to a recalculation of tax liability, and they are often issued to taxpayers because of clerical or computer errors. Id., slip op. at 28; see also O'Bryant, 49 F.3d at 342. Examples of nonrebate refunds include those issued because the Commissioner credited a taxpayer's payment twice or because the Commissioner applied a payment to the wrong tax year. Acme Steel Co. v. Commissioner, slip op. at 28.

O'Bryant dealt with a nonrebate refund. In O'Bryant, 49 F.3d at 342, the Court of Appeals for the Seventh Circuit held that the refund at issue was a nonrebate refund because it was paid by reason of an accounting error by the

**[*7]** Commissioner. The refund in that case was caused by the Commissioner's crediting a payment twice to the taxpayers' account. O'Bryant, 839 F. Supp. at 1323. In making its decision, the Court of Appeals emphasized the fundamental difference in character between rebate and nonrebate refunds: Refunds issued by the Commissioner by accident are nonrebate refunds, while rebate refunds are issued because of the taxpayer's tax liability. O'Bryant, 49 F.3d at 346; see also Clark v. United States, 63 F.3d 83, 86 n.5 (1st Cir. 1995).

The Commissioner may recover a nonrebate refund only under section 7405[4] or under administrative collection procedures if those are available. Clark, 63 F.3d at 88; Acme Steel Co. v. Commissioner, slip op. at 28; Clayton v. Commissioner, T.C. Memo. 1997-327, slip op. at 7, aff'd without published opinion, 181 F.3d 79 (1st Cir. 1998). The deficiency procedures are not available to the Commissioner to recover nonrebate refunds because of the definition of "deficiency" in section 6211(a). Acme Steel Co. v. Commissioner, slip op. at 28. Section 6211(a) provides that a "deficiency" is the amount by which the tax actually imposed exceeds--

---

[4]Sec. 7405(b) authorizes the United States to recover erroneous nonrebate refunds pursuant to a civil suit, but such a suit ordinarily must be filed within two years after the making of the refund. Sec. 6532(b); see also Clayton v. Commissioner, T.C. Memo. 1997-327, slip op. at 7-8, aff'd without published opinion, 181 F.3d 79 (1st Cir. 1998).

**[\*8]**   (1) the sum of

       (A) the amount shown as the tax by the taxpayer upon his return, if a return was made by the taxpayer and an amount was shown as the tax by the taxpayer thereon, plus

       (B) the amounts previously assessed (or collected without assessment) as a deficiency, over--

(2) the amount of rebates, as defined in subsection (b)(2), made.

In <u>Lesinski v. Commissioner</u>, T.C. Memo. 1997-234, we held that we do not have jurisdiction over nonrebate refunds.  <u>See also</u> <u>Acme Steel Co. v. Commissioner</u>, slip op. at 28.

III.   <u>The April 2, 2010, Refund</u>

The parties agree that there is no dispute as to whether the April 2, 2010, refund was a duplicate tentative refund of corporate income tax for petitioner's 1999 tax year.  They dispute only whether the second "processing" that occurred was sufficient to render the April 2, 2010, refund a rebate refund.  The issue is whether the April 2, 2010, refund was issued to petitioner on the basis of a substantive recalculation of tax liability (making it a rebate refund) or because of clerical or computer errors (making it a nonrebate refund).  For the reasons discussed below we find that a clerical error occurred rather than a substantive recalculation of petitioner's tax liability.

**[\*9]**    As discussed above the parties agree that the September 30, 2009, refund was a rebate refund.  The September 30, 2009, refund was made close to 90 days from the date on which YRC Worldwide filed the Form 1139 for petitioner.  See sec. 6411(b) (within 90 days after the date of the application for a tentative carryback adjustment, the Secretary shall make a limited examination of the application and shall make a refund, if appropriate, within that 90-day period); see also Pesch v. Commissioner, 78 T.C. 100, 115 (1982) (holding that a refund may still be a rebate refund even if the Commissioner issued it more than 90 days from the date of the application).  On the September 30, 2009, refund check respondent wrote "199912" (to signify tax year 1999) and "INT 1,275.63".

Respondent has provided two documents that clarify what happened during the second "processing".  First, respondent provided a declaration by the lead revenue agent assigned to the corporate income tax examination of YRC Worldwide and its subsidiaries.  The declaration included a copy of YRC Worldwide's Form 1139 for petitioner.  On the copy of the Form 1139, the lead revenue agent wrote: "1) 10/26/09.  Per Michele:  IRS stated over a month (1 mo.) ago that the refund is being paid.  However, the refund not [sic] received.  2) Transcript reflects pending payment at 10/20/09."  The lead revenue agent was referring to Michele Legg, to whom YRC Worldwide gave a power of attorney.

[*10] Second, respondent provided a Form 3753, Manual Refund Posting Voucher, that an Internal Revenue Service (IRS) employee completed on April 1, 2010. The manual refund posting voucher is for a refund of $357,205 to be issued to petitioner, of which $351,487 is principal and $5,718 is interest. On the form, the IRS employee wrote "5330-PO" under "Form number". Under "Reason" she checked "Tentative carry back" and "Other: 42ND DAY IS PAST". Under "Evidence of Credit Condition" she checked "Transcript of account". We note that the Internal Revenue Manual acknowledges that manual refunds have "potential for erroneous/duplicate refunds". Internal Revenue Manual (IRM) pt. 4.4.19.1(1) (July 11, 2005); see also id. pt. 21.4.4.4(1) (Oct. 1, 2013) (noting that "[m]anual refund is exception [sic] processing and has a greater margin for error.").

These documents show that respondent did not substantively recalculate petitioner's tax liability for tax year 1999. Respondent's transcripts for petitioner's 1999 tax year also show that respondent did not substantively recalculate petitioner's tax liability. A Form 4340, Certificate of Assessments, Payments, and Other Specified Matters, for petitioner's 1999 tax year states as follows:

[*11]

| Date | Explanation of transactions | Assessment, other debts (reversal) |
|---|---|---|
| 4/01/2010 | Prior tax abated | (351,487.00) |
| 4/01/2010 | Interest due taxpayer | (5,717.83) |
| 4/01/2010 | Refund | 357,204.83 |
| 4/01/2010 | Cancelled refund check | (357,204.83) |
| 4/01/2010 | Refund | 357,204.83 |
| 4/01/2010 | Interest correction | 5,717.83 |
| 9/29/2009 | Interest due taxpayer | (1,275.63) |
| 9/29/2009 | Refund | 351,965.94 |
| 4/01/2010 | Interest due taxpayer | (5,717.83) |

An official IRS non-master-file transcript for petitioner's 1999 tax year shows the same activity occurring in the same manner. Thus, the record does not reflect that the April 2, 2010, refund was the result of a substantive recalculation of tax liability. The difference in the refund amounts is attributed to accrued interest.

The record convinces us that the April 2, 2010, refund was a clerical error. The manual refund posting voucher shows that an IRS employee manually issued the second refund using a Form 5330-PO and based the refund on petitioner's transcript of account. We note that neither petitioner's tax liability for tax year 1999 nor the amount of tentative carryback refund requested changed between

**[\*12]** September 30, 2009, when the first refund was issued, and April 2, 2010.

On the manual refund posting voucher the IRS employee wrote that the relevant

form number was 5330-PO.  Likewise, on the April 2, 2010, refund check,

respondent wrote "F5330".[5]  Form 5330, Return of Excise Taxes Related to

Employee Benefits Plans, deals with excise taxes and not tentative carryback

refunds.

Consequently, we hold that the April 2, 2010, refund was a nonrebate

refund.  Respondent may not use this deficiency procedure to recover the April 2,

2010, refund.  See Acme Steel Co. v. Commissioner, slip op. at 28; Lesinski v.

Commissioner, slip op. at 7.  Respondent may pursue recovery under section 7405

in a District Court or under administrative collection procedures, if either of those

is available.  See Clayton v. Commissioner, slip op. at 7; Lesinski v.

Commissioner, slip op. at 7.  We will grant petitioner's  motion for summary

judgment.

---

[5]The record reflects that this discrepancy confused petitioner.  In a memorandum to petitioner's file dated May 10, 2010, Ms. Legg stated that they thought at first that the April 2, 2010, refund check was related to the Form 1139, but that upon further review the coding on the check convinced them that the refund check was related to excise tax.  Ms. Legg was not sure who filed a Form 5330 to request an excise tax refund.

**[*13]**  Any contentions we have not addressed are irrelevant, moot, or meritless.

To reflect the foregoing,

<u>An appropriate order and decision</u>

<u>will be entered</u>.